[No. 18523-7-II.   Division Two.   October 4, 1996.]

*In the Matter of the Marriage of JOHN HENRY EDWARDS, Respondent, v. DONNA RUTH EDWARDS, Appellant.*

---

[16]Clerk's Papers at 49.

*John S. Mills*, for appellant.

*Kathryn A. Ellis* and *Weinstein Fischer & Riley, P.S.*, for respondent.

TURNER, J. — Donna Edwards argues that the trial court erred in ruling a community debt from which her former husband, John Edwards, agreed to hold her harmless was discharged by John's bankruptcy. She claims that John's agreement was in the nature of an obligation for alimony, maintenance or support, which could not be discharged in bankruptcy. We hold that John's agreement was not in the nature of alimony, maintenance or support because the circumstances do not suggest that assistance was intended by the court. Additionally, we affirm the trial court's denial of attorney fees for prior contempt proceedings because the relevant statute does not authorize attorney fee awards for prior proceedings.

## FACTS

In 1990, John and Donna Edwards were divorced. The trial court awarded almost all of the community property, including the community home, to John. Apparently, the couple had built the home years earlier with the assistance of an unsecured loan from Donna's great-aunt, Leona LaBarge. Donna was awarded a $22,068 judgment, "representing her share of community property," a 1986 Oldsmobile, and her separate property. John was ordered to "pay, assume and hold [Donna] harmless from": (1) the $22,068 judgment; (2) the obligation on the Oldsmobile; (3) the obligation to Leona LaBarge; (4) $3,000 for attorney fees incurred by Donna; and (5) other separate obligations. The trial court set no due date for the payment of the judgment and made no findings or conclusions in the decree regarding alimony, maintenance or support for Donna.

After the decree was entered, John made a few payments on the Oldsmobile but, ultimately, it was repossessed. John also quit making payments on the obligation

to Leona LaBarge. He has not paid any of the $22,068 judgment to Donna. But John did not default on his child support obligation.

Donna served John with an order to show cause why he should not be held in contempt for failure to comply with the terms of the decree. The trial court never ruled upon the motion because John filed a chapter 7 bankruptcy petition seeking to discharge all obligations owed to Donna under the dissolution decree. The motion to show cause was stayed pending the bankruptcy proceedings.

The bankruptcy court entered an order discharging "all dischargeable debts." Because the debt to LaBarge was unsecured, it was presumed to be discharged. After the bankruptcy proceedings were complete, Donna again served John with an order to show cause why he should not be held in contempt for not paying Donna as ordered in the dissolution decree. John asked the bankruptcy court to enjoin Donna from collecting the allegedly discharged obligations. The bankruptcy judge declined to do so and asked the superior court to decide if the obligations to Donna were discharged in John's bankruptcy. John responded by filing a bankruptcy petition under chapter 13. Although the automatic stay associated with this filing would have stayed the contempt hearing, the bankruptcy judge lifted the stay to permit the hearing.

The trial court then held a full evidentiary hearing on "whether the obligations of the divorce decree were discharged by Mr. Edwards['s] recent bankruptcy or whether these obligations are not dischargeable . . . under 11 U.S.C. § 523(a)(5)." The court concluded that the award of attorney fees and the obligation to pay the debt secured by the Oldsmobile were not dischargeable because they were in the nature of maintenance or support. The court also found, however, that the LaBarge debt was dischargeable because it was not in the nature of alimony, maintenance or support. The court stated, "the underlying purpose of the [LaBarge] debt was a distribution of a community property debt which was associated with a com-

munity property. The debt obligation does nothing to provide any necessities to [Donna] or the children . . . " Additionally, the court ordered Edwards to pay Donna's attorney fees, but only those associated with the final contempt hearing.

Donna appealed, challenging the determination that John's agreement to hold her harmless on the LaBarge debt was dischargeable and the court's refusal to award attorney fees and costs incurred in the legal proceedings leading up to the final contempt hearing.

## ANALYSIS

### I. Dischargeability of LaBarge Debt

■■ The primary issue in this appeal is whether John's obligation to hold Donna harmless on the LaBarge debt was discharged by the bankruptcy court's order. The superior court found that the LaBarge debt was dischargeable because it was not in the nature of alimony, maintenance or support. Whether a debt is dischargeable is a question of law that we review de novo. *See, e.g., In re Kritt*, 190 B.R. 382 (B.A.P. 9th Cir. 1995); *In re Gionis*, 170 B.R. 675 (B.A.P. 9th Cir. 1994).[1]

■ Debts that are in the nature of alimony, maintenance or spousal support are nondischargeable in bankruptcy, whereas debts constituting property settlements are dischargeable. 11 U.S.C. § 523(a) provides, in its relevant part:

(a) A discharge under section 727, 1141,, [*sic*] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce

---

[1] The determination of whether a debtor's obligation to a former spouse is in the nature alimony, maintenance or support, and, thus, nondischargeable is a question of federal law.

decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

. . . .

**(B)** such debt includes a liability designated as alimony, maintenance, or support, unless such liability is [actually in the nature of alimony, maintenance, or support]; . . .[2]

(Footnote omitted.)

This section of the Bankruptcy Code departs from the general policy of affording the debtor a "fresh start" and instead, enforces the overriding public policy favoring the enforcement of familial obligations. *See Shaver v. Shaver*, 736 F.2d 1314, 1315-16 (9th Cir. 1984).

■ To determine whether a debt or obligation is a nondischargeable spousal support obligation or a dischargeable property settlement courts must look beyond the language of the decree to the intent of the court and the parties. Was the obligation intended for support of the former spouse? *Shaver*, 736 F.2d at 1316; *see also In re Combs*, 101 B.R. 609, 615-16 (B.A.P. 9th Cir. 1989). Although no single factor is dispositive, the following may show the intention behind an obligation:

(1) the label given the obligation—alimony, maintenance or support or property settlement;

(2) whether there is an alimony, maintenance or spousal support award already included in the decree;

(3) whether the circumstances indicate that the recipient spouse needed support, e.g., disparate incomes, custody of minor children and lack of special job skills;

(4) whether the payment of the obligation is to be in installments;

---

[2]Interestingly, 11 U.S.C. § 523 has been amended to add a new section 523(a)(15), which provides that property settlements are now generally nondischargeable in bankruptcy. Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 304(e), 108 Stat. 4106, 4133 (1994); *see also In re Kritt*, 190 B.R. at 385 n.4. Because the bankruptcy petition was filed before the effective date of the act, however, the amendment has no application here.

(5) whether the payments are made directly to the former spouse, over a substantial period of time or in a lump sum; and

(6) whether the decree contains provisions that the obligation terminates upon the death or remarriage of the former spouse or of the debtor, or some other contingency such as a change in circumstances.

*See, e.g., Gionis*, 170 B.R. at 682; *Shaver*, 736 F.2d at 1316-17; *Combs*, 101 B.R. at 616; *In re Neely*, 59 B.R. 189, 193 (Bankr. D. S.D. 1986).

We also look at "whether such assumption has the effect of providing the support necessary to ensure that the daily needs of the former spouse and any children of the marriage are satisfied." *In re Calhoun*, 715 F.2d 1103, 1109 (6th Cir. 1983). If the loan assumption is not necessary to provide support, the debtor's obligation to hold the former spouse harmless must be discharged. *Calhoun*, 715 F.2d at 1109.

Cases are illustrative. In *Shaver v. Shaver*, for example, the court held that a $197,300 "property rights" award was "in the nature of alimony, maintenance, or spousal support" because it was intended to provide support for the former wife. *Shaver*, 736 F.2d at 1315. The court noted that the following factors evinced an intent to support the former wife: (1) there was no provision for the former wife's support yet she had custody of the children, was unemployed and possessed no special job-related skills; (2) the former husband had a substantial income; and (3) installment payments were to cease if the former wife died during the payment schedule of the "property rights" award.

Another court, however, found a 50 percent award of a military pension not to be in the nature of support where: the decree labeled the military pension payments as a settlement of property; child maintenance and support payments were included in a separate paragraph; and the former wife had a master's degree and was employed as a full-time teacher. *Neely*, 59 B.R. at 193-94.

■ Here, we examine whether the trial court or the Edwards intended to create an obligation to provide support, maintenance or alimony by John's assumption of a joint debt and his agreement to hold Donna harmless for it. "Hold harmless" clauses in divorce decrees do not, in and of themselves, mean that obligations are nondischargeable as maintenance and support. *In re Shimp*, 59 B.R. 553 (Bankr. N.D. Ohio 1986). Courts have uniformly required that joint obligations assumed by the debtor as part of a divorce settlement "must be 'actually in the nature of' alimony or support in order to be excepted from discharge." *Calhoun*, 715 F.2d at 1107 and cases cited therein.

We conclude that John's agreement to hold Donna harmless from the LaBarge debt is not "in the nature of alimony, maintenance or support." First, the plain language of the dissolution decree does not so indicate. Under Section VI, "Debts and Obligations," the decree states:

A. The Petitioner [John] shall be required to pay, assume and hold the Respondent [Donna] harmless from the following:

. . . .

7. Obligation to Seattle Mortgage and Leona LaBarge.

It says nothing about an award of alimony, maintenance or support or any need for such an award.

Second, the trial court's distribution of the community property suggests that John's agreement to hold Donna harmless was not intended as support, maintenance or alimony. The court awarded nearly all the community property and all the community debt to John. Although John had the benefits of the community property, he also bore the burdens associated with such property. This distribution appears to be best characterized as a property settlement.

Third, the circumstances did not suggest that Donna needed support. Although John had a greater earning

potential and a higher paying job than Donna, Donna was employed and John was ordered to pay child support.[3] Additionally, the trial court knew that Donna planned to remarry once the dissolution was complete. It does not appear that Donna needed support when the decree was entered. We presume that the court did not intend to provide for Donna's support.

Fourth, the obligation that John hold Donna harmless on the LaBarge debt was completely independent of important contingencies like remarriage or death. Because the obligation was unrelated to contingencies bearing on a need for support or ability to provide support, we infer that the obligation was not intended by the parties or the court to operate as support.

Finally, John's agreement to hold Donna harmless for the LaBarge debt had no practical effect on Donna's ability to support herself or the children. John's assumption of the obligation does not provide Donna with necessities.[4]

In sum, it appears that John's agreement to hold Donna harmless on the LaBarge debt was not "in the nature of alimony, maintenance or support." The apparent purpose of John's agreement was to distribute a community debt associated with community property awarded to John. Accordingly, we affirm the trial court's decision that the obligation to hold Donna harmless from the LaBarge debt was discharged by the bankruptcy court's order.

## II. Attorney Fee Award

Donna next claims that the trial court erred in limiting the attorney fee award to those fees and costs incurred in the final contempt hearing. The trial court has great

---

[3]John has not defaulted on his obligation to pay child support.

[4]The effect of the assumption of the LaBarge debt differs markedly from the effect of John's assumption of the debt on the Oldsmobile. The superior court properly ruled that because Donna was awarded the Oldsmobile and because the automobile was used for the daily necessity of transportation for Donna and the children, John's assumption of the loan on the Oldsmobile was "in the nature of maintenance or support" and was therefore nondischargeable.

discretion in setting attorney fee awards and the appellate court will not reverse the determination unless it is untenable or manifestly unreasonable. *In re Marriage of Fernau*, 39 Wn. App. 695, 708, 694 P.2d 1092 (1984).

The trial court, citing RCW 7.21.030(3), ordered John to pay Donna's attorney fees from the final contempt hearing but declined to award attorney fees for the earlier, unresolved contempt hearing. RCW 7.21.030(3) provides the trial court discretion to order a person found in contempt of court to pay attorney fees for losses suffered "as a result of the contempt and any costs incurred in connection with the contempt proceeding." The first contempt motion was unresolved so the court made no finding of contempt. Additionally, the statute limits recovery to fees and costs connected with an instant proceeding—not other unresolved contempt proceedings. Therefore, the trial court's award of attorney fees for the final contempt hearing was only proper. Likewise, we decline Donna's request for attorney fees on appeal.[5]

Affirmed.

BRIDGEWATER and ARMSTRONG, JJ., concur.

Reconsideration denied November 4, 1996.

---

[5]We likewise reject John's assertion that the court award him fees for this appeal. Contrary to the requirements of RAP 18.1, he failed to cite RAP 18.1, devote a section of his brief to a request for fees, or make any supporting argument.